IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Reverse Mortgage Solutions, Inc., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 15 C 9182 |
| Reverse Mortgage Solutions, Inc., | ) ) ) | Judge Virginia M. Kendall |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Reverse Mortgage Solutions, Inc. filed this action against Defendant Reverse Mortgage Solutions, Inc. seeking to enjoin Defendant from infringing on its state and federally registered U.S. trademarks, as well as its common law trademark rights with respect to the marks "Reverse Mortgage Solutions, Inc.," "Security One Lending," and "Security 1 Lending" (collectively, the "subject marks"). The case began with Plaintiff seeking a temporary restraining order after Defendant filed with the State of Illinois to do business using Plaintiff's marks. Defendant took advantage of Plaintiff's "mistake" when Plaintiff missed the deadline for filing for the use of the marks as their corporate entity in Illinois. Defendant swept in and registered with the State of Illinois to use the marks in spite of not having any direct business plan or immediate reason to use the marks. The Court granted Plaintiff's motion for temporary restraining order on October 27, 2015. A number of motions followed. For the following reasons, the Court denies Plaintiff's motion for default judgment [22]; grants Defendant's motion for leave to file an answer and affirmative defenses [28]; denies Plaintiff's motion for order to show cause [34]; and grants Plaintiff's motion for preliminary injunction [46]. Defendant is ordered to

file its answer and affirmative defenses, submit the materials necessary to change its names that are allegedly infringing on the subject marks with the Illinois Secretary of State, and otherwise comply with this order no later than December 30, 2015. Defendant must file its Illinois Corporation amendment to change its names for expedited processing. The Court notes that Plaintiff's corporate mistake led to this dispute occurring in the first place, and Plaintiff's delay in filing a preliminary injunction in a timely fashion has also placed a significant burden on this Court by having the Court issue a ruling the day of reply briefing being filed and during the holiday week. Further, Plaintiff filed a proposed order that was supposedly a reflection of this Court's oral rulings at the TRO hearing but instead included relief that this Court never ordered. That order which was entered on October 27, 2015 must be amended to remove the offending language that was not part of this Court's ruling. Specifically, the Court strikes Paragraph 2 of the order, which states: "Defendant is hereby directed to dissolve the corporate registration of 'Reverse Mortgage Solutions, Inc.,' along with the assumed names 'Security 1 Lending' and 'Security One Lending,' with the Office of the Secretary of State for the State of Illinois." (Dkt. No. 33). Finally, based on the delay of the Defense in answering the Complaint, Defendant is warned that failure to timely comply with this Court's order will result in the issuance of a rule to show cause why Defendant should not be held in contempt for its failure to comply with this Court's orders.

## **DISCUSSION**

### **I. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND ENFORCEMENT OF THE TEMPORARY RESTRAINING ORDER IS DENIED**

On October 27, 2015, Plaintiff served its First Amended Complaint on Defendant. Defendant was ordered to answer by November 12, 2015, but failed to do so. Plaintiff filed a motion for default the next day. Three days after that, on November 16, 2015, Defendant filed an

attorney appearance, a response to the motion for default, and a response to Plaintiff's motion for temporary restraining order. Despite having appeared before the Court on October 27, 2015 to argue against entry of the temporary restraining order, Defendant's first filing in this case was not until that November 16, 2015 date. Plaintiff now moves this Court, pursuant to Fed. R. Civ. P. 55(b), to enter default judgment against Defendant.

Defendant missed the deadline for responding to Plaintiff's First Amended Complaint and is therefore in procedural default. Plaintiff seeks entry of a default judgment. This Court has broad discretion in determining a penalty for procedural default. *See McGuinness v. U.S. Postal Service*, 744 F.2d 1318, 1323 (7th Cir. 1984). The Court may generally enter default judgment against a party where the defaulting party "has exhibited a willful refusal to litigate the case properly." *See Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003). "[T]his willfulness is shown in a party's continuing disregard for the litigation or for the procedures of the court." *Id*. In this case, despite Defendant clearly having missed the deadline for filing its answer, the Court does not find that a sanction as severe as entry of default judgment is warranted. Defendant has timely appeared at all three court dates and, other than its initial three-day delay in filing its answer, has been compliant with this Court's orders.[1] Plaintiff's motion for default is denied. *See, e.g., Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 878 (7th Cir. 1988) (finding district court abused its discretion by entering the default judgment in the absence of any bad faith or willfulness without first employing any lesser sanction). Plaintiff's request for the Court to enforce its temporary restraining order is denied.

---

[1] Plaintiff insists Defendant failed to comply with the Court's temporary restraining order. That is not true. In its oral and written rulings, this Court ordered only that Defendant be prevented from using the subject marks, which Defendant has done. The language of the proposed order submitted by Plaintiff and entered in error is corrected to contain only that specific relief. Dissolution of Defendant's corporate registration with the Illinois Secretary of State was not the relief asked for by Plaintiff or contemplated by this Court in granting the temporary restraining order.

## II. DEFENDANT'S MOTION FOR LEAVE TO FILE AN ANSWER AND AFFIRMATIVE DEFENSES IS GRANTED

Defendant must file its answer and affirmative defenses on or before December 30, 2015.

## III. PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT IS DENIED

The only relief granted in this Court's oral and written ruling on Plaintiff's motion for temporary restraining order was that Defendant stop using the subject marks. Defendant complied with that order. That Plaintiff now brings this motion based on relief contained in its proposed order that was not only never discussed at the hearing on the temporary restraining order but is unlikely to be permitted by law is a shameful antic not well received by this Court. Defendant complied with this Court's order and there will be no order to show cause why Defendant should not be held in contempt.

## IV. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION IS GRANTED

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits," *Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481 (7th Cir. 2015), and that he has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied." *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012); *see also Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014). "On the merits questions, 'the burdens at the preliminary injunction stage trace the burdens at trial.' " *Id.* (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006)). A party seeking injunctive relief "has the burden of proving by a clear showing" that the injunction is warranted. *Lambert v. Buss*, 498 F.3d 446, 452 (7th Cir. 2007). If the moving party meets these threshold requirements, the

district court "must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Stuller*, 695 F.3d at 678. The Court must also consider the public interest in granting or denying the injunction. *See id*. In this balancing of harms conducted by the Court, the Court weighs these factors against one another "in a sliding scale analysis." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). "The sliding scale approach is not mathematical in nature, rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

Before delving into this preliminary injunction analysis, the Court notes that it does have the authority to grant the relief sought by Plaintiff: namely, to order Defendant to change its corporate name upon a sufficient showing of infringement. *See Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co.*, 371 F.2d 251 (7th Cir. 1966) (affirming district court's decision directing defendant to change its corporate name); *see also, e.g., Meredith Corp. v. Bouschard*, No. 78 C 1298, 1979 WL 25094, at *3 (N.D. Ill. May 22, 1979) (noting that plaintiff would have been entitled to order compelling defendant to change its corporate name had it made a sufficient showing of infringement). Though there have been changes to the Illinois Business Corporation Act since *Hulburt*, the underlying principles in *Hulburt* and the cases cited therein are as instructive today as they were then. *See, e.g., Hulburt*, 371 F.2d at 256 ("the prevention of fraud would find favor with the courts of Illinois" in applying the Illinois Business Corporation Act).

### A. Likelihood of Success on the Merits

Turning to the preliminary injunction analysis, the Court considers first whether Plaintiff has demonstrated a likelihood of success on the merits. In ruling on Plaintiff's motion for

temporary restraining order, the Court determined that Plaintiff had demonstrated a likelihood of success on the merits. Defendant has provided nothing in its subsequent papers or oral presentation to change that conclusion.

To prevail on its federal trademark infringement claim, Plaintiff must show that (1) its mark is protectable and (2) that Defendant's use of the mark is likely to cause confusion among consumers. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). A mark is prima facie protectable where it is either registered with the U.S. Patent and Trademark Office or has established a degree of distinctiveness. *See* 15 U.S.C. § 1057(b); *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). In this case, Plaintiff holds a federal registration trademark for one of its d/b/a names, "Security 1 Lending." Even though "Reverse Mortgage Solutions, Inc." is not federally registered and is merely descriptive (as opposed to suggestive, arbitrary, or fanciful—which would garner it more protection), the mark may still receive trademark protection if it has acquired a "secondary meaning in the collective consciousness of the relevant community." *See KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1014 (N.D. Ill. 2014); *see also Packman v. Chicago Tribune Co.*, 267 F.3d 628, 641 (7th Cir. 2001) (secondary meaning exists when a mark "has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark").

To establish secondary meaning, a court may consider several factors, including: (1) the amount and manner of advertising; (2) the sales volume; (3) the length and manner of use; (4) consumer testimony; and (5) consumer surveys. *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1085 (7th Cir. 1988). In support of its motion for preliminary injunction, Plaintiff provided a declaration by its assistant vice president Wayne Young that

states that RMS has continuously used the company name "Reverse Mortgage Solutions, Inc." since at least 2007 and has made significant investments in marketing, advertising, and promoting the identification of its name, services, and brand to customers nationwide. Specifically, Young avers that the company has spent over $4 million so far this year on marketing efforts such as print advertisements, television commercials, websites, and social media. He further states that as a "large, national company with hundreds of employees and a nationwide customer base, all of RMS's business, promotional, and marketing materials and collateral, from letterhead and business cards to the company's websites and internet presence, are used nationally and display the name 'Reverse Mortgage Solutions, Inc.' " The Amended Complaint similarly alleges that:

> RMS has used its Marks on the internet, at www.rmsnav.com and www.security1.com, and in advertisements and other promotional materials since at least as early as 2008 in Illinois and as early as 2007 in other states. Over the past several years, RMS has also extended its continuous and extensive internet presence by creating and maintaining business profiles on social media outlets such as LinkedIn and Facebook. RMS has also made substantial investments in developing and airing television spots to promote its brand and services. (Dkt. No. 16, ¶ 15).

Moreover, and more compelling in this case, is that proof of intentional copying is probative evidence of secondary meaning. *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1182 n.13 (7th Cir. 1989). Defendant's exact copying of each of the three subject marks demonstrates that this copying was intentional. *See id*. When asked at the hearing on the temporary restraining order whether its purpose for incorporating under the subject names was to garner business, Defense counsel offered merely that it was a "business decision." At a more recent status hearing, the Court again questioned Defense counsel regarding his client's intention for the marks. Counsel mused that he "could" create a corporation to provide legal defense for clients in reverse mortgage cases, which would be different than the type of business operated by Plaintiff.

7

This, of course, is contrary to what was set forth in Defendant's original cease and desist letter to Plaintiff where he insisted that Plaintiff's "use of the mark can cause confusion among consumers and is likely to continue to cause customer confusion in the future." Plt.'s Mtn for Temp. Restraining Order, Exhibit A, p. 1. This new tentative plan appears to the Court to have been conveniently fabricated merely for the purpose of this litigation. Defense counsel's demeanor and lack of candor throughout the proceeding with the Court evidence his lack of honest intentions. The evidence before the Court at this time is that Defendant intentionally copied Plaintiff's marks with no plan other than to hold the marks hostage in order to seek a hefty settlement award. Plt.'s Mtn for Prelim. Injunc., Exhibit 1, p. 3-4 (Defendant demanding from Plaintiff $500,000 and the release of two mortgages held by Plaintiff in which counsel for Defendant claims a continuing interest in exchange for the release of the corporate names). Such behavior strongly indicates to this Court that Defendant's intent in copying the Plaintiff's business names was solely to profit from their secondary meaning rather than due to an honest business dispute.

In fact, throughout the proceedings, the Defense repeatedly presses the position that Plaintiff failed to file its corporate papers timely and therefore Defendant is entitled to use the mark with abandon. This position defies the basic premise that registering a corporate name with the Illinois Secretary of State does not "[a]brogate or limit the common law or statutory law of unfair competition or unfair trade practices, nor derogate from the common law or principles of equity or the statutes of this State or of the United States with respect to the right to acquire and protect copyrights, trade names, trade marks, service names, service marks, or any other right to the exclusive use of names or symbols." 805 ILCS 5/4.05(c)(2). Defendant not only attempts to circumvent this provision by pushing this meritless position, but its conduct evinces the sort of

bad faith and abusiveness commonly seen in cybersquatting cases. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 435 (7th Cir. 2010) ("Cybersquatting is nothing more than a scheme to defraud businesses. It is not carried out aimlessly or indiscriminately but targeted against the rightful owner in hopes they will pay for the infringing website, rather than incur the costs of going through the courts."); *see also* S. Rep. No. 106-140, at 5 (1999) (Cybersquatting is the practice of registering "well-known brand names as Internet domain names" in order to force the rightful owners of the marks "to pay for the right to engage in electronic commerce under their own brand name."); H.R. Rep. No. 106-412, at 5-7 (1999). The Court does not doubt that Defendant's conduct has been specifically targeted based on the secondary meaning of the subject marks.

As discussed with respect to the temporary restraining order, the second element—whether Defendant's use of the mark is likely to cause confusion—is also sufficiently satisfied. The likelihood of confusion analysis in a trademark infringement case includes consideration of seven factors. In this case, two of the three important factors, similarity of the marks and the defendant's intent, are clear given that both Plaintiff and Defendant are using the identical name "Reverse Mortgage Solutions" as well as the same d/b/a names, "Security 1 Lending" and "Security One Lending." Intent in this context refers not only to the intent to use a mark that is already in use somewhere else but the actual intent to confuse customers. *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1119 (7th Cir. 1997). The adoption of all of the identical names of the Plaintiff in connection with same or similar products in the same geographical area as Plaintiff's shows Defendant's intent to "palm off" his product as that of the Plaintiff's. *See, e.g., Tory Burch LLC v. Partnerships and Unincorporated Associations Identified on Schedule A*, No. 13 C 2059, 2013 WL 1283824, at *5 (N.D. Ill. March 27, 2013)

("Defendant's use of identical trademarks, meta data, and near-identically designed products made it apparently Defendants tried to confuse the public). Although Defendant stated that he does not intend to use the marks for the same business that Plaintiff is in (*i.e.*, "the origination and administration of reverse mortgages and management services"), his proposed business (*i.e.*, providing legal defense in reverse mortgage cases) would target the same audience and be substantially similar as to cause confusion among consumers. The lack of evidence of actual confusion "is neither surprising nor fatal to [Plaintiff's motion for preliminary injunction] at this stage in the litigation." *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001)." It is likely that Plaintiff could prevail on this element, especially since Defendant has admitted that it believes "use of the mark can cause confusion among consumers and is likely to continue to cause customer confusion the future" in the cease and desist letter sent to Plaintiff. Plt.'s Mtn for Temp. Restraining Order, Exhibit A, p. 1.

As to the remaining factors, Plaintiff has provided evidence that there is a similarity of products as well as area and manner of concurrent use given that the cease desist letter also noted Defendant's intention to not only use the "similar mark on same or similar products" but its intent to do so "here in Illinois." *Id*. The Court finds Defendant's new insistence that he intends to make a different product incredulous and, at the very least, insufficient to overturn a finding of likelihood of confusion. Plaintiff has provided no information regarding the degree of care likely to be exercised by consumers or the strength of its mark. However, given that the most important factors and several others weigh in favor of the Plaintiff, it is likely RMS will be able to establish that Defendant's use of the mark will cause consumer confusion. Plaintiff had made a sufficient showing of likelihood of success on the merits.[2]

---

[2] The Court notes that Defendant raised three affirmative defenses in its response brief. The Court refuses to consider these defenses because they are included on pages 21-28 of Defendant's response brief. Under the local

## B. Irreparable Harm and Inadequate Remedy at Law

Since the Court's ruling on the TRO motion, the Defendant has been similarly unsuccessful in combatting Plaintiff's demonstration that it will suffer irreparable harm if injunctive relief is denied. *See, e.g., Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) ("standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions") (citing *Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*, No. 01 C 585, 2001 WL 128164, at *1 (N.D. Ill. 2001)). To establish irreparable harm, the Plaintiff must demonstrate "that irreparable injury is likely in the absence of an injunction." *See Winter*, 555 U.S. at 22. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing." *Id*.

There is a "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992); *see also Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982) ("This and many other Courts have often recognized that the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible to adequate measurement for remedy at law."). In some cases, this presumption has

---

rules, "neither a brief in support of or in opposition to any motion […] shall exceed 15 pages without prior approval of the court." *See* N.D. Ill. L.R. 7.1. The Defendant's response brief is 31-pages long: more than twice the allotted length. Yet, Defendant never sought leave to file such a lengthy brief and the Court certainly never granted such leave. On the contrary, this Court made very clear at the status hearing on December 15, 2015—just one week before Defendant filed its response—that time was of the essence with respect to these filings so that the Court could rule promptly on these time-sensitive issues. The Court expressly warned the parties that their strict adherence to the filing deadlines was of the utmost importance; what good would timely filing be if the Court allowed the parties to file any length of brief they wished with the intended or unintended consequence of delay? The Court need not inquire whether Defendant's lengthy filing was intended to cause delay; suffice it to say that the Court will not consider newly raised affirmative defenses. *See Cleveland v. Porca Co.*, 38 F.3d 289, 197 (7th Cir. 1994) ("[I]t is within the district court's discretion to strike an unauthorized filing.") The Court notes, however, that had it considered such defenses, this ruling would stand. The asserted defenses of waiver, self-inflicted harm, and unclean hands do not negate Plaintiff's reasonable likelihood of success on the merits. *See Vogel v. Am. Society of Appraisers*, 744 F.2d 598, 604 (7th Cir. 1984) (emphasizing that the denial of a preliminary injunction does not serve to "prejudge the trial.")

been enough to determine the plaintiff has no adequate remedy and will suffer irreparable harm. *See, e.g., Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 790 (N.D. Ill. 2010). In addition to the presumption, however, Plaintiff also claims it has been actively promoting, marketing, and advertising in Illinois and on the Internet for the past nine years and will lose good will, business reputation, and customer confidence. Plaintiff has also represented that it has been unable to secure $11.2 million in loans as a result of this conflict. Furthermore, the likelihood of confusion that has been recognized by both Plaintiff and Defendant in this case could damage the reputation that Plaintiff has established. *Processed Plastic Co.*, 675 F.2d at 858 (preliminary injunction granted in part because likelihood of confusion could damage good will associated with company's television show, thus demonstrating irreparable damage and lack of adequate remedy). When the nature of the loss may make damages difficult to calculate, as in this case since the loss is to one's reputation, the virtual impossibility of measuring precise economic consequences renders a damages remedy inadequate. *SMC Corp. v. Lockjaw, LLC*, 481 F. Supp. 2d 918, 928 (N.D. Ill 2007).

Moreover, in support of this motion, Plaintiff has provided evidence that it holds Illinois Residential Mortgage licenses from the Illinois Department of Financial and Professional Regulation, Division of Banking under the names "Reverse Mortgage Solutions, Inc." and "Security 1 Lending." These licenses allow Plaintiff to "originate, purchase, and service residential mortgage loans in Illinois using the names under which the Licenses are issued." Currently, Plaintiff has 439 active foreclosure proceedings in Illinois, 2,984 current loans being services, and 56 pending loan applications ongoing in Illinois.[3] If Defendant does not change its

---

[3] In support of its opposition to the preliminary injunction, Defendant submitted the affidavit of David Laz, the secretary of Defendant RMS, stating that Laz had conducted basic Internet research and failed to unearth these same numbers. First, this research is incomplete on its face since 36 counties apparently "did not give such information over the phone or had paid for website." Second, the vice president of the plaintiff company is in a better (if not the

corporate name and allow Plaintiff to regain its registration, Plaintiff will lose its mortgage licenses and be forced to amend all of its current transactions to reflect whatever new name it is forced to operate under while Defendant squats on its name. This is a significant and immediate harm that Plaintiff will endure absent entry of a preliminary injunction.

Turning to the balancing of harms, the Court finds that the Defendant is unlikely to suffer harm sufficient to deny the preliminary injunction because it has only just registered with the Secretary of State about three months ago. Defendant has not used the marks since then and has represented to the Court that it does not intend to do so until this matter has been resolved. Indeed, counsel for Defendant stated at the last status hearing that his client was "willing to maintain the status quo until we can find out what's going on." The status quo is exactly what this order demands. The Court finds, in light of the foregoing considerations, that the Plaintiff has adequately demonstrated its need for a preliminary injunction based on its trademark infringement claim. The same analysis applies to Plaintiff's false designation of origin and unfair competition; Illinois trademark infringement; and unfair competition claims. *See Fortres Grand Corp. v. Warner Bros Entm't Inc.*, 763 F.3d 696, 700-01 (7th Cir. 2014) (likelihood of confusion analysis applies equally to Lanham Act and state law unfair competition claims); *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir. 1997) ("federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent"); *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993) (state law unfair competition claim analysis mirrors infringement analysis).

## **CONCLUSION**

---

best) position to provide information about the plaintiff company's pending business transactions; the Court credits his affidavit accordingly.

For the reasons stated, the Court denies Plaintiff's motion for default judgment [22]; grants Defendant's motion for leave to file an answer and affirmative defenses [28]; denies Plaintiff's motion for order to show cause [34]; and grants Plaintiff's motion for preliminary injunction [46]. Defendant is ordered to file its answer and affirmative defenses, file to change its name with the Illinois Secretary of State, and otherwise comply with this order no later than December 30, 2015. Defendant is warned that failure to timely comply with this Court's order will result in the issuance of a rule to show cause as to why Defendant should not be held in contempt of court.

Date: 12/29/2015

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois